# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SOCIETY OF PROFESSIONAL ENGINEERING )
EMPLOYEES IN AEROSPACE, INTERNATIONAL )
FEDERATION OF PROFESSIONAL AND )
TECHNICAL EMPLOYEES, LOCAL 2001, )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　 )
v. 　　　　　　　　　　　　　　　　　　 )　Case No. 14-1281-MLB
　　　　　　　　　　　　　　　　　　　 )
SPIRIT AEROSYSTEMS, INC., )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　Defendant. )
_____)

## MEMORANDUM AND ORDER

This matter is before the court on three motions:

1) Plaintiff's motion to compel the return of inadvertently produced attorney-client communication and for protective order (Doc. 21);

2) Defendant's motion to compel plaintiff to produce documents responsive to defendant's document requests (Doc. 22); and

3) Defendant's motion to amend the Scheduling Order (Doc. 35).

On May 20, 2015, the court conducted a telephone conference to discuss and clarify the issues presented in the briefs. Plaintiff appeared through counsel, M. Jeanette Fedele, Thomas B. Buescher, and Thomas E. Hammond. Defendants appeared through counsel, Boyd A. Byers and Sarah E. Burch. For the reasons set forth below, plaintiff's motion to compel and for protective order (Doc. 21) shall be GRANTED; defendant's motion to compel (Doc. 22) shall be GRANTED IN PART and DENIED IN PART; and

defendant's motion to amend the scheduling order (Doc. 35) is GRANTED IN PART and DENIED IN PART.

## Background

Plaintiff Society of Professional Engineering Employees in Aerospace, International Federation of Professional and Technical Employees, Local 2001 ("SPEEA") and defendant Spirit Aerosystems, Inc. ("Spirit") are, respectively, a labor union and a commercial aircraft components manufacturer who have been long-term parties to a collective bargaining agreement ("CBA"). That agreement provides to the represented employees of Spirit a mechanism by which they may bring grievances to the company through a four-step process. If the employee is unsatisfied with Spirit's response to a grievance, it may be subject to binding arbitration.

The parties are no strangers to litigation. In 2012, SPEEA filed a federal lawsuit seeking to compel arbitration of a class-wide grievance involving Spirit's processes for evaluating employee performance. On cross-motions for summary judgment, the district court found that the dispute was not arbitrable because the CBA "precludes the arbitration of broad disputes between union and company involving hundreds or thousands of employees."[1] Citing to Section 3 of the CBA, Judge Marten found that "each grievance must be considered on an individualized basis in 'a separate and distinct arbitration hearing'" and that class-wide issues are subject to arbitration "only if they

---

[1] *Soc'y of Prof'l Eng'g Employees in Aerospace, Local 2001, Int'l Fed'n of Prof'l & Technical Employees v. Spirit Aerosystems, Inc.*, No. 12-1180-JTM, 2012 WL 5995552, at *6 (D. Kan. Nov. 30, 2012).

involve a dispute over a lockout."[2]  The Tenth Circuit upheld that decision on September 17, 2013.[3]

On July 8, 2013, Spirit employee William Hartig made an oral Step One grievance to his first level manager regarding what he believed to be inappropriate medical premium deductions from his pay.[4]  After his request was denied, Hartig proceeded to Step Two of the grievance process by emailing his supervisor.  Spirit again dismissed his complaint and on Hartig's behalf, SPEEA mailed a Step Three grievance on September 16, 2013 – one day prior to the Tenth Circuit's decision regarding class-wide issues. After Spirit refused to hold a Step Three grievance meeting with SPEEA representatives, SPEEA demanded arbitration of Hartig's grievance which Spirit rejected.  SPEEA then filed this action to compel arbitration of the grievance.

Spirit not only challenges the grievance on its merits, but denies that the grievance is subject to the CBA's arbitration provisions.  Spirit admits that the CBA addresses the employees' contributions to the medical plan.  However, Spirit asserts that SPEEA encouraged Hartig and other employees to act as "straw men" to bring individualized grievances seeking class-wide remedies in an effort to circumvent the Tenth Circuit decision.  Spirit argues that SPEEA lacks standing to pursue this claim because the CBA

---

[2] *Id*. at *6.

[3] *Soc'y of Prof'l Eng'g Employees in Aerospace v. Spirit Aerosystems, Inc.*, 541 F. App'x 817 (10th Cir. 2013).

[4] On July 1, 2013, Spirit converted from a fully insured medical plan with a private insurance carrier to a self-funded plan.  The parties' CBA requires that employees contribute a percentage of the "medical premium cost." (Compl., Doc. 1 at 5).  Hartig asserts that, because the medical plan is now self-funded, there are no "premium" costs which should be deducted from his paycheck.

does not authorize SPEEA to bring a grievance and that the agreement prohibits grievances seeking to address class-wide issues.[5]

### I.      Plaintiff's Motion to Compel the Return of Inadvertently Produced Attorney-Client Communication and for Protective Order (Doc. 21)

Following the Tenth Circuit's September 2013 decision, long-time SPEEA counsel Tom Buescher emailed Bob Brewer, SPEEA's Midwest Director, to advise him on how to handle future grievances in light of the Circuit's opinion.  Brewer reportedly referenced that email frequently when reviewing union employee grievances.[6]   On December 8, 2014, Brewer mailed a letter—unrelated to this litigation—to two members of Spirit's senior management.  Unbeknownst to Brewer, the attorney-client email was inadvertently picked up off his desk and mailed to the Spirit managers along with the letter.  Spirit did not immediately notify SPEEA that it received the attorney-client document, but more than a month later, on January 12, 2015, SPEEA counsel discovered the email in Spirit's document production in this case.  That same day, SPEEA's counsel immediately notified Spirit, asking that the email be destroyed and any references to the privileged material be removed from Spirit's files.  Spirit refused, and after multiple discussions between the parties, SPEEA filed this motion to compel return of the email.

At the outset, the court notes that although Spirit asserts multiple arguments against the retention of the privilege, it acknowledges that the document is attorney-client communication.  Given the parties' long-standing relationship, it would have been clear to Spirit that Tom Buescher was (and remains) SPEEA's counsel and the email from him

---

[5] Def.'s Answer, Doc. 7 at 5.
[6] Brewer Aff. 3, Pl.'s Motion, Doc. 21, Ex. B.

constituted legal advice to his client.  Spirit's assertion that the privilege was waived because SPEEA failed to assert an objection in its discovery responses or include the email on its privilege log is addressed in Section II, *infra*[7]; and that rationale is rejected.

Spirit also claims that Fed. R. Civ. P. 26(b)(5)(B), Fed. R. Evid. 502 and the Scheduling Order do not apply to "claw back" the document because the inadvertent disclosure occurred outside of discovery.  It is correct that the inadvertent disclosure occurred outside the normal course of discovery.  However, Spirit included the email as a part of its discovery responses and also argues that the email is relevant as evidence of the "scheme concocted" by SPEEA to bring grievances on class-wide issues.  Because Spirit is attempting to use the document in the course of litigation, this issue is clearly governed by the broad scope of Fed. R. Civ. P. 26[8] and the court frankly finds Spirit's argument rather disingenuous.[9]  The sole issue to decide, then, is whether SPEEA's inadvertent disclosure of the email amounts to a waiver of the privilege.

The parties agree that the five-factor test often utilized in this district should be applied to determine whether the inadvertent disclosure constitutes a waiver of the

---

[7] *See* discussion *infra* of Def.'s Motion to Compel (Doc. 22).

[8] *Cf. Weeks v. Samsung Heavy Indus., Ltd.*, 1996 WL 288511, at *1 (May 30, 1996, N.D. Ill.).

[9] Absent from the parties' briefing is a discussion of the Kansas Rules of Professional Conduct— in particular KRPC 4.4(b).  This rule necessitates that "a lawyer who receives a document . . . relating to the representation of the lawyer's client and knows **or reasonably should know** that the document . . . was inadvertently sent **shall promptly** notify the sender" (emphasis added). The comments to Rule 4.4 make clear that section (b) applies to a situation where a document "is accidentally included with information that was intentionally transmitted."  The Rule "**requires** the lawyer to promptly notify the sender in order to permit that person to take protective measures." KRPC 4.4, Comment [2] (emphasis added).  By failing to do so, defense counsel may have "proceeded at their and their client's peril" and failed to appreciate any "ethical obligations that may surpass the limitations implicated by the attorney-client privilege and that apply regardless of whether the documents in question retain their privileged status." *Burt Hill, Inc. v. Hassan*, No. CIV.A. 09-1285, 2010 WL 419433, at *4 (W.D. Pa. Jan. 29, 2010).

attorney-client privilege.[10]  The burden to prove that a waiver did not occur lies with the party asserting the attorney-client privilege.[11]  The factors considered include: 1) the reasonableness of the precautions taken to prevent inadvertent disclosure; 2) the time taken to rectify the error; 3) the scope of discovery; 4) the extent of disclosure; and 5) the overriding issue of fairness.  A review of each factor follows.

1.  **Precautions**.  With respect to the precautions taken, Brewer described his awareness of its confidential nature and his efforts to keep the privileged document segregated from general office documents.[12]  While it is true that he apparently left the email lying on his desk after referring to it during a conversation with a potential grievant, it appears to be simple human error that the email was picked up with other documents for copying.  The use of "reasonable" precautions does not require those precautions to be fool-proof.  At its worst, this factor is neutral and, at its best, it tips the scales slightly in SPEEA's favor.

2.  **Time lapse**.  In this case, the time lapse between the inadvertent disclosure and SPEEA's discovery of the disclosure was just over one month.  Given that Brewer did not know that the email had been disclosed, and that his office closed for two weeks over the holidays, any delay is regarded as even less suspicious.  "The relevant time for rectifying any error begins when a party discovered or with reasonable diligence should have discovered the inadvertent disclosure."[13]  Once SPEEA realized the email had been

---

[10] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 1867478, at *9 (D. Kan. July 1, 2006)).
[11] *Id.*
[12] Brewer Aff. 3, Pl.'s Motion, Doc. 21, Ex. B.
[13] *Zapata v. IBP, Inc.*, 175 F.R.D. 574, 577 (D. Kan. 1997) (citing *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.*, 133 F.R.D. 171, 172 (D. Kan. 1989)).

disclosed, SPEEA counsel contacted Spirit's counsel the <u>very day</u> of discovering its disclosure to request its return, and the court finds that this factor weighs heavily in SPEEA's favor.

3.   **Scope of discovery**.  Given the facts of this inadvertent disclosure by a party rather than a litigant's counsel, the court finds that this factor is neutral when applied to these facts.  This factor is generally applied to the review of voluminous discovery by counsel and is not as applicable to a single inadvertent disclosure by the party itself, during routine communications between the parties outside the formal discovery process.

4.   **Extent of disclosure**.  Generally, this factor examines both the extent of the inadvertent disclosure and how widely the item was disseminated by the receiving party.[14]  Here, only one page was disclosed to two individuals at Spirit.  Spirit assures the Court that it is holding the document "in confidence."[15]  Taking defendant at its word, this factor weighs against waiver.

5.   **Fairness**.  Spirit knew full well that the email in its possession came from SPEEA's attorney with whom Spirit's managers had dealt for years.  Spirit also kept quiet about the inadvertent disclosure for more than a month, although the document's privileged nature and accidental disclosure were reasonably obvious.  Most importantly, the email outlines SPEEA's approach to handling current and future grievances, and

---

[14] *See Williams v. Sprint/United Mgmt. Co.*, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006); *Wallace v. Beech Aircraft Corp.*, 179 F.R.D. 313, 315 (D. Kan. Mar. 30, 1998); *Monarch Cement Co. v. Lone Star Indus., Inc.,* 132 F.R.D. 558, 560 (D. Kan.  Oct. 9, 1990).
[15] Def.'s Resp., Doc. 32, at 2.

Spirit has stated its intention to use the email "in this and other cases"[16] which would give Spirit an unfair advantage in future grievance actions with SPEEA.  Spirit's counsel admitted during the telephone conference that, had the privileged email not been inadvertently disclosed, Spirit's discovery tactics would have been the same.  This factor weighs in favor of SPEEA.

Therefore, after application of all five factors, the court finds that the inadvertent disclosure of the attorney-client email did not waive its privileged nature.  Plaintiff's Motion to Compel the Return of Inadvertently Produced Attorney-Client Communication (Doc. 21) shall be GRANTED.  Additionally, plaintiff's request for a protective order shall also be GRANTED.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Compel the Return of Inadvertently Produced Attorney-Client Communication (**Doc. 21**) is **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 26(b)(5)(B) and (c), defendant must promptly return or destroy the inadvertently disclosed email as well as any copies defendant may have in its possession.  Defendant may not use or disclose the information for any purpose and must take reasonable steps to retrieve the information if such information was disclosed before defendant was notified of the document's privileged nature.  Defendant shall file a Certificate of Compliance verifying its adherence to this order **on or before June 10, 2015**.

---

[16] Pl.'s Motion, Ex. D, at 2.

## II.  Defendant's Motion to Compel Plaintiff to Produce Documents Responsive to Defendant's Document Requests (Doc. 22)

On January 7, 2015, Spirit served SPEEA with 12 requests for production of documents.  After discussion between the parties, Spirit agreed to withdraw Request Nos. 7 through 10.  SPEEA responded to the eight remaining requests on February 25, 2015. Spirit claims that SPEEA wrongfully withheld numerous responsive documents and this motion followed.

Spirit raises three primary arguments: 1) that the "general objections" asserted in the preface of SPEEA's responses, based on privilege and relevance are improper and therefore do not apply to those responses to which the objections are not specifically asserted; 2) that SPEEA's response to Request No. 4 contained no objections, so all responsive documents must be produced; and 3) that SPEEA cannot meet its burden to show that the discovery sought in Request Nos. 3, 5, 6, 11, and 12 is not reasonably calculated to lead to the discovery of admissible evidence.  Each argument is addressed as follows.

### 1.  <u>General objections</u>

Spirit is correct in its interpretation of Rules 26(b)(5)(A)(i)[17] and 34(b)(2)[18] and the court normally disapproves of general objections asserted in the preface of discovery

---

[17] Fed. R. Civ. P. 26(b)(5)(A)(i) requires a party who withholds information on the basis of privilege to expressly make the claim of privilege.

[18] Fed. R. Civ. P. 34(b)(2) addresses Responses and Objections.  Section (B) requires that for each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.  Section (C) requires that an objection to part of a request must specify the part and permit inspection of the rest.

responses "to the extent" those objections may apply to particular requests, when the responding party fails to state a specific objection in each discovery response.[19] However, the distinguishing characteristic, which differentiates SPEEA's responses from those cases cited by Spirit, is that SPEEA produced both a detailed privilege log and a detailed "merits log" with its responses.  Each log describes those documents withheld from production by providing identification (Bates) numbers, the document type (email, letter, presentation, etc.), the date of each item, the author, the recipients of each item, and a brief description of the topic of each document withheld.[20]  SPEEA's individual responses reference those Bates numbers of the withheld items responsive to each request. SPEEA asserts that it withheld those documents that "go to the merits of the grievance, an issue not relevant to this case which is to compel arbitration of that grievance."

After review of the logs and after consultation with counsel, the court finds that any documents which SPEAA withheld are clearly delineated and described on both the privilege and merit logs in order to inform Spirit of their existence, with enough information provided to enable Spirit to evaluate those items.  While SPEEA's method was unconventional and the court certainly does not encourage the use of general objections, in this specific instance Spirit's responses provided more than "hypothetical or contingent possibilities" regarding which documents were withheld and on what

---

[19] See *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.,* No. Civ.A. 97–2391–GTV, 1998 WL 231135, at *1 (D.Kan. May 6, 1998)).
[20] *See* Def.'s Mem. Supp., Doc. 23, Exs. 3 (merits log) and 4 (privilege log).

rationale.[21]    SPEEA's failure to expressly assert its claim of privilege or relevance objection to each individual request does not automatically result in a waiver of the privilege or objection.  For good cause, the court may excuse even an untimely objection, and the harsh remedy of waiver has been "reserved . . . for only those cases where the offending party committed unjustified delay in responding to discovery."[22]

Spirit's contention that SPEEA's objections to documents contained on the privilege or merits logs that are not also specified in each response are waived is therefore rejected.  Because Spirit concedes that the items on the privilege log are, in fact, privileged, those documents will retain their privileged status and should not be produced.  Those items listed on the merits log will be examined for relevance in Section 3 below.

## 2.    Request No. 4

Spirit's second argument centers on its Request No. 4.  In that request, Spirit seeks "All documents regarding the grievance referenced in [the] Complaint."  Request No. 4 is very similar to Request No. 3, which seeks SPEEA's file regarding the grievance referenced in the Complaint.  Spirit argues that SPEEA did not assert any objections to Request No. 4, so all objections should be considered waived and all responsive documents must be produced.

---

[21] *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.,* No. 97–2391–GTV, 1998 WL 231135, at *1 (D. Kan. May 6, 1998)).

[22] *Robinson v. City of Arkansas City, Kan.*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *5 (D. Kan. Feb. 24, 2012) (citing *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,* 586 F.Supp.2d 1250, 1266 (D. Kan. 2008).

During the motion conference on May 20, 2015, Spirit acknowledged that Request No. 4 was intended as a safety net to catch any documents related to Request No. 3 that were omitted from SPEEA's actual file.  Counsel for SPEEA stated that she understood Request Nos. 3 and 4 to include "anything having to do with Hartig's grievance" and, to that end, everything responsive to both requests has either been produced or listed on the merits log.   The court accepts this explanation.  Spirit's challenge to the preservation of the relevance objections and assertions of privilege has been rejected.  Therefore, the only remaining issue for determination regarding Request Nos. 3 and 4 is the relevance of those items listed on the merits log.

## 3.    <u>Relevance</u>

Spirit argues that SPEEA's relevance objections to Request Nos. 3, 5, 6, 11, and 12 should be overruled, while SPEEA maintains that materials responsive to those requests clearly lie outside the scope of discovery.  With regard to Request Nos. 3, 5, and 6, SPEEA claims to have either produced or included on the merits log all responsive documents,[23] withholding as irrelevant only those items contained on the merits log.  The court accepts this representation; therefore, the crux of this motion is the relevance of those items listed on SPEEA's merit log responsive to Request Nos. 3, 5, and 6 and the relevance of the information sought by Request Nos. 11 and 12.

---

[23] The parties partially resolved issues regarding Request Nos. 5 and 6 during the May 20, 2015 telephone conference.  Those requests seek materials in the possession of Hartig, to which SPEEA objected, in part, because the materials would have been in another person's custody and control.  SPEEA disclosed that it has either produced or listed on the merits log everything they knew to exist from Hartig, and Spirit has since filed a notice of its intent to issue a documents subpoena directly to Hartig (*see* Notice, Doc. 41, filed May 20, 2015). Therefore, the only remaining issue is whether those items on SPEEA's merits log responsive to Request Nos. 5 and 6 are relevant and must be produced.

### A.  Legal Standards

Fed. R. Civ. P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Relevance is broadly construed at the discovery stage[24] and discovery relevance is minimal relevance,[25] which means a request should be deemed relevant if there is any possibility that the request will lead to the discovery of admissible evidence.[26]

The party requesting discovery bears the low burden of showing the request to be relevant on its face but, after facial relevance is established, the burden shifts to the party resisting discovery.[27]  "The party opposing discovery is required to come forth with more than a mere conclusory statement that the discovery is irrelevant and must specifically demonstrate how the request is not reasonably calculated to lead to the discovery of admissible evidence."[28]  The decision to grant a motion to compel is a matter of discretion for the court.[29]  "Courts should lean towards resolving doubt over relevance in favor of discovery."[30]

---

[24] *Nkemakolam v. St. John's Military Sch.*, 2013 WL 5551696, at *3 (D. Kan. Oct. 7, 2013) (citing *Smith v. TCI*, 137 F.R.D. 25, 26 (D. Kan 1991)).

[25] *Teichgraeber v. Memorial Union Corp. of Emporia State University,* 932 F.Supp. 1263, 1265 (D.Kan.1996) (internal citation omitted).

[26] *Nkemakolam*, 2013 WL 5551696, at *3 (citing *Smith*, 137 F.R.D., at 26).

[27] *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006).

[28] *Jackson v. Coach, Inc.*, 2008 WL 782635, at *4 (D. Kan. Mar. 20, 2008)(citing *Teichgraeber,* 932 F.Supp. at 1266)).

[29] *G.D. v. Monarch Plastic Surgery, P.A.*, 239 F.R.D. 641, 644 (D. Kan. 2007) (citing *Martinez v. Schock Transfer & Warehouse Co.*, 789 F.2d 848, 850 (10th Cir. 1986)).

[30] *Jackson*, 2008 WL 782635, at *4 (citing *Teichgraeber,* 932 F.Supp. at 1266) (internal citations omitted).

### B.     Analysis

#### i.      Request Nos. 3, 5, and 6

SPEEA contends that the information requested in Request Nos. 3, 5, and 6 is not relevant to this case because the single issue before the court is whether Hartig's grievance is arbitrable under the CBA.  SPEEA claims that Spirit's theory that Hartig acted as a straw man in order to sidestep the Tenth Circuit opinion cannot be true because of the timing of Hartig's initial grievance.  Hartig brought his Step One and Step Two grievances in July 2013, and SPEEA filed the Step 3 grievance on Hartig's behalf on September 16, 2013.  The Tenth Circuit opinion in *SPEEA v. Spirit*[31] was not filed until September 17, 2013.  However, SPEEA completely ignores the fact that the district court opinion (which the appellate court affirmed) was issued on December 30, 2012.[32] Despite the timing of the Tenth Circuit opinion, it is conceivable that the union began developing its new grievance strategy after the district court opinion was filed, although the court offers no opinion regarding that topic.

The parties go to considerable length to outline the issues of substantive versus procedural arbitrability and how each should affect discovery.  The Tenth Circuit Court of Appeals provides authoritative definitions:

> Substantive arbitrability deals with whether the dispute relates to matters that the parties agreed to arbitrate. *UAW v. Folding Carrier Corp.,* 422 F.2d 47, 49 (10th Cir.1970). Procedural arbitrability addresses whether parties have satisfied conditions that allow them to use arbitration. *Howsam v.*

---

[31] *Soc'y of Prof'l Eng'g Employees in Aerospace v. Spirit Aerosystems, Inc.*, 541 F. App'x 817, 819 (10th Cir. 2013).

[32] *Soc'y of Prof'l Eng'g Employees in Aerospace, Local 2001, Int'l Fed'n of Prof'l & Technical Employees v. Spirit Aerosystems, Inc.*, No. 12-1180-JTM, 2012 WL 5995552, at *6 (D. Kan. Nov. 30, 2012).

*Dean Witter Reynolds, Inc.,* 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). If the dispute is substantive, the court determines arbitrability; if the issue is procedural, the arbitrator determines arbitrability. *Id.*[33]

Ultimately, the character of arbitrability is a dispositive issue and it will be determined by the District Judge.  But for purposes of discovery, the court is required to take a broad approach and must apply a minimal relevance standard.

Here, it appears that the issues of procedure and substance are intricately intertwined.  SPEEA oversimplifies the problem by characterizing the case as solely procedural—involving a condition precedent to arbitration, similar to time limits or notice, which would be an appropriate decision for the arbitrator.  But what the parties, and particularly Spirit in its defense, are really asking the court is to delve into the deeper issue of the potential class-wide application of a single grievance.  Substantive arbitrability—whether the parties have agreed to submit this type of dispute to arbitration—is applicable to the "narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter."[34]  The U.S. Supreme Court describes the need for a decisionmaker with comparative expertise on the issues.[35] In light of the 2013 Tenth Circuit decision, it is reasonable for Spirit to expect the court to interpret its previous order.[36]

Considering these complicated issues, the court cannot say with certainty that the merits (or subject) of the grievance and the procedural questions can be divorced from one another.  The potential for class-wide remedy, the existence of the 2012 and 2013

---

[33] *Soc'y of Prof'l Eng'g Employees in Aerospace v. Spirit Aerosystems, Inc.*, 541 F. App'x 817, 819 (10th Cir. 2013).
[34] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).
[35] *Id.* at 85.
[36] *Id.*

orders, and the timing of Hartig's grievance create layers of analysis which the court finds impossible to neatly categorize into "substantive" or "procedural" concerns. Therefore, resolving doubt over relevance in favor of discovery, the court will order production of those items contained on the merits log, all of which appear to be responsive to Request Nos. 3, 4, 5, and 6.[37]

### ii.     Request Nos. 11 and 12

Request Nos. 11 and 12 present additional concerns.  In Request No. 11, Spirit seeks:

> All documents regarding the decision by the United States District Court for the District of Kansas in Case No. 12-1180 and/or the decision by the United States Court of Appeals for the Tenth Circuit in Case No. 12-334... regardless of whether the case is specifically identified or mentioned, including but not limited to any strategy for filing grievances in light of the court ruling.

Request No. 12 seeks "All documents regarding or concerning" three grievances filed by other employees (not Hartig) on different dates, and includes not only SPEEA's entire files on each, but "any notes of, and emails involving, Bob Brewer, B.J. Moore, Matthew Joyce, Brenda Reiling, Bill Hartig, and any other person in any type of past or present leadership role with SPEEA, as well as all other internal SPEEA documents regarding any of these grievances."

SPEEA's sole objection to both requests was that the documents requested lie outside the scope of discovery.  The initial analysis of the scope of discovery is described above and will not be repeated.  But the court must also examine proportionality as a part

---

[37] SPEEA's Responses to Request Nos. 3 and 4 encompass all documents contained on the merits log (Bates Nos. 00117-118, 127-226).  Therefore, its Responses to Request Nos. 5 and 6, while also referencing items on the merits log, appear to overlap.

of its inquiry.    Rule 26(b)(2)(C)(iii) instructs the court to weigh the burden of the proposed discovery with its likely benefit, and the court may consider "the needs of the case . . . [and] the importance of the discovery in resolving the issues."[38]   "The party resisting the discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1) *or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure*."[39]   Although the court resolved its doubts in favor of discovery regarding the relevance of those items identified on the merits log, documents regarding unrelated and withdrawn grievances in Request No. 12 have marginal relevance to this specific grievance by Hartig.    Additionally, the court cannot ignore the relationship between the parties and the effect that such broad disclosure might have.    Requiring the labor union to turn over its entire internal analyses of the earlier case described in Request No. 11 falls outside the boundaries of discovery on the issue of arbitrability of Hartig's grievance, particularly in light of the ordered disclosure of those items identified on the log.

---

[38] The text of Fed. R. Civ. P. 26(b) will change effective December 1, 2015, absent contrary Congressional action.  The analysis of proportionality will become equally as important to the analysis of scope of discovery as the information's relevance to any party's claim or defense. The expected amendment to Rule 26(b)(1) reads, in part:  "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

[39] *Aramburu v. Boeing Co.*, No. 93-4064-SAC, 1994 WL 810248, at *2 (D. Kan. Sept. 22, 1994). (emphasis added).

**4.**     **Payment of Expenses**

Pursuant to Federal Rule of Civil Procedure 37(a)(5), if a motion to compel is granted, the court must require the party whose conduct necessitated the motion to pay the movant's expenses incurred in making the motion unless circumstances make such an award unjust.  Spirit did not request sanctions and, after review of all discovery motions currently considered as well as the telephone conference with counsel, the court finds it appropriate and just for the parties to bear their own expenses incurred in connection with this motion to compel.

**IT IS THEREFORE ORDERED** that Spirit's Motion to Compel Production of Documents (Doc. 22) is **GRANTED IN PART**, in that SPEEA must produce all documents contained on its merits log[40] which are responsive to Spirit's Request for Production Nos. 3, 4, 5 and 6.  The motion is **MOOT** to the extent that the parties have agreed upon a resolution to Request Nos. 5 and 6, with the exception that any documents in SPEEA's possession or included on the merits log responsive to those requests must still be produced.

**IT IS FURTHER ORDERED THAT** the motion is **DENIED IN PART** in that SPEEA is not required to produce any documents contained on its privilege log and **DENIED IN PART** in that SPEEA is not required to respond to Request Nos. 11 and 12.

**IT IS THEREFORE ORDERED** that plaintiff shall provide the information ordered produced on or before **June 15, 2015**.

---

[40] Def.'s Mem. Supp., Doc. 23, Ex. 3.

### III.    Defendant's Motion to Amend the Scheduling Order (Doc. 35)

The initial Scheduling Order (Doc. 11) was amended by agreement of the parties on February 10, 2015 (Doc. 17) because the parties sought additional time to schedule depositions.  After the filing of the cross-motions to compel, the parties agreed to further suspend depositions pending the court's ruling on those motions.  Spirit now seeks a 60-day extension on <u>all</u> remaining deadlines in the event that the ruling on the pending motions leads to the need for additional discovery.[41]

SPEEA agrees to extend the deposition deadline to August 3, 2015 and the dispositive motion deadline to September 3, 2015.  However, SPEEA argues that no good cause exists for reopening unlimited written discovery.   SPEEA asserts that the cost considerations which necessitate extension of the deposition deadline until sometime after resolution of the pending motions do not apply to written discovery.   Although Spirit was free to send additional written discovery in advance of any discovery rulings, it failed to do so and SPEEA reasons that this failure demonstrates a lack of diligence. The law requires that Spirit show good cause for reopening discovery[42] and SPEEA contends that Spirit has not met that burden.

SPEEA concedes that the extension of the deposition deadline may necessitate additional discovery on topics which might arise for the first time during depositions. Given that concession, and after thorough consideration of the arguments of counsel

---

[41] Defendant filed its motion (Doc. 35) to which plaintiff responded (Doc. 40).  However, after discussion during the May 20, 2015 telephone conference, counsel for Spirit informed the court that no reply brief would be necessary.

[42] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11-CV-2112-EFM-KMH, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing Fed. R. Civ. P. 16(b)(4)).

presented during the May 20, 2015 telephone conference, the court finds that limited written discovery shall be allowed in consideration of the extended deposition deadline.

**IT IS THEREFORE ORDERED** that the defendant's motion to amend the scheduling order is **GRANTED IN PART** to the extent that the deposition deadline is extended to August 3, 2015 and the dispositive motion deadline is extended to September 3, 2015.  Defendant's motion is **DENIED IN PART** in that all remaining deadlines will not be extended, with the exception of limited written discovery described below.

**IT IS FURTHER ORDERED** that limited written discovery will be allowed as long as the discovery requests: 1) are commenced or served in time to be completed by August 28, 2015;   2) originate from information discovered for the first time at deposition; and  3) are otherwise appropriate under Fed. R. Civ. P. 26(b).   No party may serve more than 10 interrogatories, including all discrete subparts, on any other party.  No party may serve more than 10 requests for admissions, including all discrete subparts, on any other party.  The party to whom the request is directed must respond in writing within 10 days following service of the request.  Any objections to discovery responses shall be communicated to the responding party within 5 days of receipt of the response. All other parameters described in Section Two of the Scheduling Order (Doc. 11) shall continue to apply.

**IT IS FURTHER ORDERED** that, prior to seeking judicial intervention for any disputes regarding this additional limited discovery, the parties shall confer <u>in person</u> in an attempt to reach agreement.  In the event the parties are unable to reach agreement after in-person communication, the parties shall submit position statements by email to

the chambers of the assigned U.S. Magistrate Judge.  Following review of the position statements, a telephone conference with the Court and oral ruling on the dispute will follow within a reasonably accelerated timeframe.

**IT IS FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 16(e), a pretrial conference is scheduled for **August 14, 2015 at 11:00 a.m**; this pretrial conference will be conducted by telephone unless the judge determines that the proposed pretrial order is not in the appropriate format or that there are some problems requiring counsel to appear in person.  Unless otherwise notified, the assigned U.S. Magistrate Judge will conduct the conference.  No later than **August 7, 2015**, defense counsel must submit the parties' proposed pretrial order (formatted in Word or WordPerfect) as an attachment to an e-mail sent to the chambers of the assigned U.S. Magistrate Judge.  The proposed pretrial order must <u>not</u> be filed with the Clerk's Office.  It must be in the form available on the court's website at *http://www.ksd.uscourts.gov/flex/?fc=9&term=5062*.  The parties must affix their signatures to the proposed pretrial order according to the procedures governing multiple signatures set forth in paragraphs II(C) of the *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civil Cases*.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 1st day of June 2015.

s/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge